UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

DACODA BROWNFIELD,

        Plaintiff,

v.

UNKNOWN LABUFF et al.,

        Defendants.
_____/

Case No. 2:25-cv-47

Honorable Robert J. Jonker

**OPINION**

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim for the reasons detailed below.

**Discussion**

**I.    Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following MBP staff in their official and personal capacities: Sergeant Unknown Allen and Corrections Officers Unknown LaBuff and S. Zampese.

Plaintiff alleges that on July 24, 2024, he was experiencing a mental breakdown in his cell. (Compl., ECF No. 1, PageID.3.) Between 8:00 a.m. and 8:30 a.m., Defendant LaBuff passed out razors for inmates in Plaintiff's housing unit to use for shaving. (*Id.*) Plaintiff took the razor that Defendant LaBuff gave him, "broke it down[,] and started slicing [his] arms and wrists making a lot of cuts." (*Id.*) Plaintiff alleges that he was crying and hitting his head on his wall while cutting himself. (*Id.*)

Plaintiff felt weak and light-headed and sat down on the floor of his cell, letting "[his] blood flow as much as [his] body wanted." (*Id.*) Defendant LaBuff came around to collect the razors and saw Plaintiff lying in a pool of blood. (*Id.*) Defendant LaBuff said, "Hey mister you should've done a better job[;] I don't think that's gonna do the job. I'm not pressing my button to get you help so you should give me the razor and clean your self up." (*Id.*) Plaintiff asked to see his psychiatrist, telling Defendant LaBuff he "want[ed] to just die." (*Id.*) Defendant LaBuff responded, "I'm not calling your [psychiatrist] for this bullshit so give me the razor." (*Id.*) Plaintiff slid the razor as close to the cell door as he could, but Defendant LaBuff did not try to collect it.

Plaintiff alleges that he sat in his blood "all day until dinner time." (*Id.*) Around that time, Plaintiff told himself that if he could not die by cutting himself, he would just hang himself. (*Id.*) Plaintiff tied a bed sheet behind his neck and around his throat, dropped "to [his] butt," and allowed

2

the sheet to go tight around his neck until he became unconscious. (*Id.*) When Plaintiff came to, Defendant Zampese was grabbing Plaintiff's head and shoving it between Plaintiff's legs. (*Id.*)

Plaintiff was placed in a restraint chair and placed in a dry cell for observation. (*Id.*) Plaintiff alleges that he was in the observation cell for two days. (*Id.*) During that time, he was in soft restraints with his legs chained to his buttocks. (*Id.*) Plaintiff was also naked. (*Id.*) He contends that his cuts were never cleaned and that he never received medical and mental health care. (*Id.*) Instead, Plaintiff received a misconduct. (*Id.*) According to Plaintiff, Defendant Allen was the officer who authorized Plaintiff's placement in restraints. (*Id.*) When Plaintiff asked why he was being restrained, Defendant Allen said, "That's what we do to people like you." (*Id.*)

Based upon the foregoing, the Court construes Plaintiff's complaint to assert various Eighth Amendment claims against Defendants. Plaintiff seeks $300,000.00 in monetary damages. (*Id.*, PageID.4.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity Claims

As noted above, Plaintiff sues Defendants in their official and individual capacities. (Compl., ECF No. 1, PageID.2.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has

not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.

Here, Plaintiff seeks only monetary damages. (ECF No. 1, PageID.4.) However, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities, and any claim for monetary damages against Defendants in their official capacities fails to state a claim upon which relief can be granted.

### B.    Personal Capacity Claims

The Court has construed Plaintiff's complaint to assert various Eighth Amendment claims against all Defendants. Notably, Plaintiff's complaint can be construed as asserting Eighth Amendment claims against all Defendants premised upon the failure to provide Plaintiff medical and mental health treatment after his suicide attempts. The Court has also construed an Eighth Amendment claim against Defendant LaBuff for demonstrating deliberate indifference to Plaintiff's risk of suicide, as well as Eighth Amendment claims against Defendants Zampese and Allen premised upon Plaintiff's placement in restraints for two days in the observation cell. Taking Plaintiff's allegations as true, as is required at this stage, Plaintiff's personal capacity claims against all Defendants cannot be dismissed on screening.

### Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) Moreover, having conducted the review required by the PLRA, the Court determines that Plaintiff's official capacity claims against Defendants will be dismissed for failure to state a claim, under 28 U.S.C.

§§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's individual capacity claims against all Defendants remain in the case.

    An order consistent with this opinion will be entered.

Dated:   April 14, 2025                    /s/ Robert J. Jonker
                                                        Robert J. Jonker
                                                        United States District Judge